UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| WINFRED A. KENNEDY | CIVIL ACTION |
| VERSUS | NO: 10-528 |
| J.C. PENNEY CORPORATION, INC. AND J.C. PENNEY COMPANY, INC. (HOLDING) | SECTION: "C" (1) |

## ORDER AND REASONS

Before the Court is a Motion for Summary Judgment filed by defendant, J.C. Penney Corporation, Inc. ("JCP") (Rec. Doc. 42). Also before the Court is a Motion to Strike Certain Portions of Affidavit of Kevin Daigler filed by plaintiff, Winfred A. Kennedy ("Kennedy") (Rec. Doc. 42). Having reviewed the memoranda of the parties, the record in the case, and the applicable law, the Court GRANTS JCP's motion for summary judgment and DENIES plaintiff's motion to strike for the following reasons.

## I. Background

Kennedy, an African American, filed this suit against JCP[1] seeking damages for racial discrimination and retaliation under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-2, *et seq.*, the Louisiana employment discrimination statutes, La. Rev. Stat., § 23:302, *et*

---

[1] Kennedy also named J.C. Penney Company, Inc. (Holding) ("JCP Holding") as a defendant. On July 13, 2010, the Court granted Kennedy's *ex parte* motion to dismiss his claims against JCP Holding, dismissing the claims without prejudice.

*seq.*, and the Louisiana Whistleblower Statute, La. Rev. Stat. § 23:967.[2] Kennedy alleges that JCP failed to promote him to the salon leader position because of his race, and that JCP terminated his employment because of his race and in retaliation for his filing a complaint against JCP with the Equal Employment Opportunity Commission ("EEOC") for its alleged failure to promote him.

In the fall of 2008, JCP hired Kennedy as a hair stylist at its store salon in Hammond, Louisiana. In early 2009, Kevin Daigler ("Daigler"), the store manager, interviewed Kennedy, Britni Besse, and Elizabeth Coxe, a Caucasian, for the position of salon leader. Daigler also offered an interview to Cassandra Cotton, an African-America, who reportedly declined to be considered for the position. On March 10, 2009, Coxe was promoted to salon leader. Kennedy alleges that he filed an EEOC complaint against JCP alleging that he was not promoted due to his race.

In August 2009, JCP's Loss Prevention Manager, Vanessa Harrison, noticed that a salon associate at the Hammond, Louisiana store was ringing an excessive number of manual markdowns and marking sales of services and products at zero in violation of company policy. Harrison discussed the matter with Julie Brown, an African America, who is JCP's Assistant Store Manager at the Hammond location. Brown and Harrison had a meeting with Kennedy to discuss the situation, and Kennedy admitted that he had given away products and services to keep his clients happy. After the meeting, Brown emailed Amanda Hart, the JCP Human Resources Senior Manager for the region, and Hart advised Brown that the human resources department supported terminating Kennedy for his violating the company's sales procedures by giving unauthorized discounts and free

---

[2] Kennedy alleged in his Complaint that the Louisiana Whistleblower statute is La. Rev. Stat. § 23:631. Section 23:631, is not the Louisiana Whistleblower statutes, but rather, concerns paying a former employee after his or her employment is terminated.

services to customers. Daigler then discussed the matter with Harrison and Pat Meadowcraft, the JCP District Manager, and terminated Kennedy.

Kennedy alleges that he was terminated one week after his EEOC complaint was dismissed in retaliation for filing the complaint and as a result of racial discrimination. Kennedy argues that JCP's proffered reason for his termination, his violating the company's sales policy, was a pretext for discrimination.

JCP filed a motion for summary judgment arguing that Kennedy cannot maintain a case for race discrimination or retaliation. Specifically, JCP argues that Kennedy cannot demonstrate that he was discriminated against because of his race when he was not promoted to the store leader position because he cannot prove that he was qualified for the position. Also, JCP argues that Kennedy cannot maintain a case for retaliation because there is no evidence that he engaged in a protected activity. Further, JCP argues that Kennedy cannot establish that he was terminated because of his race.

## II. Law & Analysis

### a. Kennedy's Motion to Strike

Kennedy moved to strike two paragraphs of Daigler's affidavit. Specifically, Kennedy seeks to exclude the statement in paragraph 4 that Cassandra Cotton told Daigler that she was not interested in the salon leader position, and the statement in paragraph 7 that Meadowcraft and Harrison told him to read Hart's termination decision to Kennedy without discussion. Kennedy argues that these statements are inadmissible hearsay.

Rule 801 of the Federal Rules of Evidence defines hearsay as an out-of-court statement of someone other than the declarant that is offered to prove the truth of the matter asserted. Rule 802 of the Federal Rules of Evidence provides that hearsay is not admissible unless it meets an exception provided by the Federal Rules of evidence or a rule prescribed by the Supreme Court. Under Rule 803(1) hearsay is admissible when the statement describes or explains an event or condition while the declarant was perceiving the event.

Although the statements in paragraphs 4 and 7 of Daigler's affidavit regarding what other people told him are hearsay, they are admissible under Rule 803(1) because they explain Daigler's state of mind at the relevant times. Daigler's declaration regarding Cotton explains that she was not considered for the salon leader position because Daigler believed she was not interested. Also, Daigler declared in his affidavit that he believed he had no choice but to terminate Kennedy because his superiors, Harrison and Meadowcraft told him to do so. Therefore, Kennedy's motion to strike is DENIED.

**a. Summary Judgment Standard**

In general, a district court can grant a motion for summary judgment only when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); FED. R .CIV. P. 56(c). When considering a motion for summary judgment, the district court "will review the facts drawing all inferences most favorable to the party opposing the motion." *Reid v. State Farm Mut. Auto. Ins. Co.,* 784 F.2d 577, 578 (5th Cir. 1986).

The court must find "[a] factual dispute ... [to be] 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party ... [and a] fact ... [to be] 'material' if it might affect the outcome of the suit under the governing substantive law." *Beck v. Somerset Technologies, Inc.,* 882 F.2d 993, 996 (5th Cir.1989) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). "If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Engstrom v. First Nat'l Bank of Eagle Lake,* 47 F.3d 1459, 1462 (5th Cir. 1995) (citing *Celotex,* 477 U.S. at 322-24). The mere argued existence of a factual dispute will not defeat an otherwise properly supported motion. *See Anderson,* 477 U.S. at 248. "If the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate. *Id.* at 249-50.

**b.  Race Discrimination and Retaliation under Title VII**

Title VII prohibits an employer from "failing or refusing to hire or ... [from] discharging, or otherwise discriminating against an individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).  Also, under 42 U.S.C. § 2000e(a), employers are prohibited from discriminating against an employee "because he has opposed any practice made an unlawful practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

A plaintiff may prove discrimination or retaliation under Title VII through direct or circumstantial evidence.  *Nasti v. CIBA Specialty Chemicals Corp.,* 492 F.3d 589, 593 (5th Cir.

2007). Direct evidence is "evidence which, if believed proves the fact of discriminatory animus without inference or presumption." *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897 (5th Cir. 2002). "Because direct evidence is rare, a plaintiff ordinarily uses circumstantial evidence to meet the test set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed. 668 (1973)." *Id.* However, "the *McDonnell Douglas* test is inapplicable where the plaintiff presents direct evidence of discrimination." *Id.* (quoting *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 123, 105 S.Ct. 613, 621-22, 83 L.Ed. 2d 523 (1984)).

Kennedy has not submitted any facts that provide direct evidence of JCP's alleged race discrimination or retaliation. Because this is a circumstantial evidence "pretext" case, the *McDonnell Douglas* test applies. *See Septimus v. Univ. of Houston*, 399 F.3d 601, 608 (5th Cir. 2005).

In *McDonnell Douglas Corp.*, the Supreme Court of the United States "established an allocation of the burden of production and an order for the presentation of proof in Title VII discriminatory-treatment cases." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506, 113 S.Ct. 2742, 2746, 125 L.Ed.2d 407 (1993). Under this evidentiary framework, the plaintiff must first establish a *prima facie* case of discrimination. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 142, 120 S.Ct. 2097, 2106, 147 L.Ed.2d 105 (2000). If the plaintiff establishes a *prima facie* case, the burden then shifts to the defendant to produce a legitimate, nondiscriminatory reason for the conduct. *See Reeves,* 530 U.S. at 142. This burden is one of production, not persuasion and involves no credibility assessment. *Id.* If the defendant meets the burden, the presumption raised by the plaintiff's *prima facie* case disappears. *Id.*

If a *prima facie* showing is made, the employer then bears the burden of articulating a legitimate, nondiscriminatory reason for its action. *St. Mary's Honor Center. v. Hicks,* 509 U.S. at 506-07; *Nasti,* 492 F.3d at 593. The defendant must state, "through the introduction of admissible evidence, reasons for its actions which, *if believed by the trier of fact,* would support a finding that the unlawful discrimination was not the cause of the employment action." *St. Mary's,* 509 U.S. at 507 (quoting *Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 254-55, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)) (emphasis original).

If the defendant articulates such a reason, the presumptions of the framework dissipate and the focus shifts to the ultimate question: whether the plaintiff can prove that the defendant intentionally discriminated against the plaintiff. *Nasti,* 492 F.3d at 593. The plaintiff may show intentional discrimination by direct or circumstantial evidence of discriminatory intent. *Grimes v. Texas Dept. of Mental Health & Mental Retardation,* 102 F.3d 137, 140-41 (5th Cir.1996). This burden can be satisfied with evidence that the employer's reason is a pretext for discrimination, either through evidence of disparate treatment or by showing that the proffered explanation is false or unworthy of credence. *St. Mary's,* 509 U.S. at 511; *Nasti,* 492 F.3d at 593. The plaintiff may attempt to overcome the employer's proffered nondiscriminatory reason by providing evidence that the employer's legitimate, nondiscriminatory reason is merely pretextual.

The plaintiff "retains the ultimate burden of persuasion throughout the case." *Faruki v. Parsons S.I.P., Inc.,* 123 F.3d 315, 319 (5th Cir. 1997) (citing *Burdine,* 450 U.S. at 253). A plaintiff can meet his burden of demonstrating pretext and thereby establish a jury issue to avoid summary judgment or judgment as a matter of law "if the evidence taken as a whole (1) creates a fact issue

as to whether each of the employer's stated reasons was what actually motivated the employer and (2) creates a reasonable inference that [race, sex or national origin] was a determinative factor in the actions of which plaintiff complains." *Vadie v. Mississippi State University,* 218 F.3d 365, 374, fn. 23 (5th Cir. 2000) (explaining that this analysis first formulated in *Rhodes v. Guiberson Oil Tools,* 75 F.3d 989, 994 (5th Cir. 1996), survives the Supreme Court's abrogation of *Rhodes* in *Reeves,* 530 U.S. 133). A *prima facie* case and sufficient evidence of pretext would permit a court or jury to find unlawful discrimination, without additional independent evidence of discrimination, though such a showing will not always be adequate to sustain a jury's finding of liability. *Reeves,* 530 U.S. at 142-49.

### 1. Race Discrimination

To establish a *prima facie* case of race discrimination, the plaintiff must demonstrate that he (1) belonged to a protected group; (2) was qualified for the position; (3) suffered an adverse employment action; and, (4) was replaced with a similarly qualified person who is not a member of his group, or in the case of disparate treatment, that similarly situated employees were more favorably treated. *Nasti,* 492 F.3d at 593; *Johnson v. Louisiana,* 351 F.3d 616, 621 (5th Cir.2003); *Laxton v. Gap Inc.,* 333 F.3d 572, 579 (5th Cir.2003); *Blow v. City of San Antonio, Texas,* 236 F.3d 293, 296 (5th Cir. 2001).

Kennedy alleges two claims of race discrimination: (1) that he was not promoted because of his race; and, (2) that he was terminated because of his race. As an African-American, Kennedy was a member of a protected class, and he was not promoted and then terminated, which are adverse employment actions. *See McCoy v. City of Shreveport*, 492 F.3d 551, 559 (5th Cir. 2007) ("Adverse

employment actions include only ultimate employment decisions such as hiring, granting leave, discharging, promoting, or compensating.").

### i. Promotion

#### A. Kennedy's *Prima Facie* Case

JCP argues that Kennedy cannot establish a *prima facie* case of race discrimination regarding its failure to promote him in April 2009 because he cannot establish that he was qualified for the position, or that a similarly situated Caucasian employee was treated more favorably. JCP argues that Kennedy had not demonstrated that he was qualified for the salon leader position. Prior to his employment at JCP, Kennedy was a forklift driver, a security guard, and an employee of the United Parcel Service. His last salon job was in 2004, and he was terminated from that position. JCP also argues that Kennedy cannot demonstrate that he had qualifications similar to those of Coxe who owned her own bridal beauty business.

Kennedy argues that he was qualified for the salon leader position because he has been a licensed barber since 1975, has been employed by many salons, including corporate owned salons, has owned salons, and has a beautician's licenses in three states. Kennedy argues that his qualifications are superior to those of Coxe.

Viewing this disputed issues of fact in the light most favorable to the plaintiff, Kennedy has established a *prima facie* case of race discrimination regarding JCP's failure to promote him to the salon leader position.

### B. JCP's Non-Discriminatory Justification

Because Kennedy has established a *prima facie* case of race discrimination regarding JCP's failure to promote him to the salon leader position, JCP now has the burden of production to articulate a legitimate, nondiscriminatory reason for its action. *See Reeves*, 530 U.S. at 142.

In his affidavit, Daigler declared that Coxe was promoted to the salon leader position because she owned her own bridal beauty business for 13 years, performed well at JCP, and demonstrated superior interviewing skills and leadership potential that Kennedy did not possess. Also, Brown declared in her affidavit that in November 2008, Kennedy was warned about violating the company's cellular telephone policy by using his personal cellular telephone on the sales floor, and in January 2009, she was informed that Kennedy had consistent error notifications when processing sales procedures.

JCP has met its burden of production to articulate a nondiscriminatory justification for the failure to promote Kennedy to the salon leader position through the affidavits of Daigler and Brown.

### C. Pretext

Because JCP produced a nondiscriminatory justification for not promoting Kennedy, Kennedy's *prima facie* case disappears. *Id.* To survive summary judgment, Kennedy must demonstrate by a preponderance of the evidence that JCP's stated reasons for his termination were not its true reasons, but rather were pretext for retaliation. *Id.* Kennedy must demonstrate that he would have been promoted "but for" his race. *Septimus*, 399 F.3d at 608. Also, he "must put forward evidence rebutting each of the nondiscriminatory reasons the employer articulates." *Jackson v. Watkins*, 619 F.3d 463, 467 (5th Cir. 2010).

Kennedy argues that JCP's stated reasons for not promoting him to the salon leader position, that Coxe was more qualified, was a pretext for discrimination because he was more qualified for the position, and Cassandra Cotton, an African American who was the best performing stylist in the salon, was not promoted.

Kennedy has not demonstrated that he would have been promoted "but for" his race. He has not presented any evidence that Cotton was interested in the salon leader position, or that Coxe was not qualified. Further, he has not presented any evidence rebutting JCP's contention that he was not promoted due to disciplinary issues. Therefore, JCP's motion for summary judgment is GRANTED as to Kennedy's race discrimination claim regarding JCP's failure to promote him to the salon leader position, and that claim is DISMISSED WITH PREJUDICE.

### ii. Termination

Kennedy cannot establish a *prima facie* case of race discrimination with respect to his termination. Kennedy alleges in his Amended Complaint that his clients were reassigned to Caucasian hairstylists. However, he has not alleged, nor has he presented evidence, that his position was filled with a similarly qualified person who is not a member of his group. *Black v. Pan American Laboratories, L.L.C.,* 646 F.3d 254 (5th Cir. 2011). To the extent that Kennedy claims for purposes of disparate impact that similarly situated employees were treated more fairly, the claim fails due to the lack of proof that the reasons provided for the termination were pretextual or that race was a motivating factor in the termination. *Okoye v. University of Texas Houston Health Science Center*, 245 F.3rd 507.513 (5th Cir. 2001). Therefore, JCP's motion for summary judgment

is GRANTED as to Kennedy's race discrimination claim regarding his termination, and that claim is DISMISSED WITH PREJUDICE.

### 2. Retaliation

In order to make a *prima facie* case of retaliation, the plaintiff must prove (1) he was engaged in protected activity; (2) the defendant took adverse employment action against him; and (3) a causal connection exists between the protected activity and the adverse employment activity. *Mattern v. Eastman Kodak Co.,* 104 F.3d 702, 705 (5th Cir.1997). A plaintiff who is unable to show a *prima facie* case cannot survive a summary judgment challenge. *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 429 (5th Cir. 2000).

An employee engages in a protected activity if he opposes any unlawful employment practice, or makes a charge, testifies, assists, or participates in any manner in an investigation, proceeding, or hearing under Title VII. 42 U.S.C. § 2000e-3(a). Complaining to a company's hotline regarding racial discrimination is a protected activity. *See Williams v. Taco Bell Corp.*, 46 Fed. Appx. 732 (5th Cir. 2002).

Kennedy alleges that he made an EEOC complaint against JCP for racial discrimination regarding its failure to promote him. However, Kennedy has not produced any evidence to support this allegation. The EEOC documentation filed with his Amended Complaint reflects that he filed the EEOC complaint after his termination. Therefore, the EEOC complaint cannot serve as the protected activity that caused the alleged retaliation.

However, Kennedy argues that he complained of racial discrimination regarding JCP's failure to promote him to JCP's complaint hotline, and that the was terminated within three days of

12

his making the complaint. Although complaining to a company's hotline is a protected activity, the record of Kennedy's call does not reflect that he complained about racial discrimination regarding JCP's failure to promote him. The record of the call states that Kennedy called the hotline to request "guidance on the company's policy and procedure regarding the criteria management is supposed to use when making decisions about promotions." He reported that Coxe was promoted although he had more experience, and that Daigler told him it was because Coxe was a former Miss Louisiana beauty pageant queen and local celebrity. Kennedy reportedly stated that promoting Coxe based on her fame is unfair, and that she was not performing her managerial tasks properly. There is no mention of racial discrimination. Therefore, Kennedy's call to JCP's complaint hotline cannot serve as the protected activity that caused the alleged retaliation. Thus, JCP's motion for summary judgment is GRANTED as to Kennedy's retaliation claim, and that claim is DISMISSED WITH PREJUDICE.

**c. Louisiana Employment Discrimination Law**

Louisiana Revised Statutes § 23:332 provides that it is unlawful for an employer to discriminate in employment by failing or refusing to hire or discharging any individual or otherwise discriminating against any individual with respect to his compensation, or terms, conditions, or privileges of employment because of his race. Because this statute is similar to Title VII, Louisiana courts look to jurisprudence construing Title VII to analyze discrimination claims. *Bustamento v. Tucker,* 604 So.2d 532, 539 n.9 (La. 1992). Thus, Louisiana courts use the *McDonnell Douglas* burden shifting test to analyze discrimination claims. *Lee v. Constar, Inc.*, 05-633, p. 9 (La. App. 5 Cir. 2/14/06); 921 So.2d 1240, 1274.

As explained above, Kennedy has not established that he can maintain a case for race discrimination or retaliation under Title VII. Therefore, he cannot do so under the Louisiana Employment Discrimination Law, and his claims under that statute are DISMISSED WITH PREJUDICE.

**d.  Louisiana Whistleblower Statute**

The Louisiana Employment Discrimination Law does not prohibit retaliation. Thus, Kennedy bases his Louisiana state law retaliation claim on the Louisiana Whistleblower Statute, La. Rev. Stat. § 23:967, which provides in pertinent part:

> A. An employer shall not take reprisal against an employee who in good faith, and after advising the employer of the violation of law:
>
> (1) Discloses or threatens to disclose a workplace act or practice that is in violation of state law.
>
> (2) Provides information to or testifies before any public body conducting an investigation, hearing, or inquiry into any violation of law.
>
> (3) Objects to or refuses to participate in an employment act or practice that is in violation of law.

The statute also states: "Reprisal includes firing, layoff, loss of benefits, or any discriminatory action the court finds was taken as a result of an action by the employee that is protected" under the statute. *Id.* at § 23:967(C)(1). The Supreme Court of Louisiana has not interpreted this statute. However, Louisiana courts have consistently found that the employer

14

must have committed an actual violation of state law to violate this statute. *Beard v. Seacoast Elec., Inc*., 2006-1244 (La. App. 4 Cir. 2/4/07); 951 So.2d 1168; *Accardo v. Louisiana Services & Indem. Co.*, 2005-2377 (La. App. 1 Cir. 6/21/06); 943 So.2d 381, 387; *Hale v. Touro Infirmary*, 2004-0003 (La. App. 4 Cir. 11/3/04); 886 So.2d 1210, *writ denied*, 2005-0103 (La. 3/24/05); 896 So.2d 1036; *Puig v. Greater New Orleans Expressway,* 2000-924 (La. App. 5 Cir. 10/31/00); 772 So.2d 842, *writ denied*, 2000-3531 (La. 3/9/01); 786 So.2d 731; *Diaz v. Superior Energy Services LLC*, 341 Fed.Appx. 26 (5th Cir. 2009). Therefore, a plaintiff must prove that the workplace action or practice about which he complained was an actual violation of state law.

As discussed above, Kennedy cannot support a race discrimination claim under the Louisiana Employment Discrimination Law. Therefore, he cannot prove a violation of state law necessary to support a claim under the Louisiana Whistleblower Statute, and this claim is DISMISSED WITH PREJUDICE.

### III. Conclusion

Accordingly,

**IT IS ORDERED** that Defendant JCP's Motion for Summary Judgment is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff Kennedy's Motion to Strike Certain Portions of Affidavit of Kevin Daigler is **DENIED**.

New Orleans, Louisiana, this 25th day of October, 2011.

_____
**HELEN G. BERRIGAN**
**UNITED STATES DISTRICT JUDGE**